**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **PETER M. GRATTON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-2510** |
| **BOARD OF SUPERVISORS FOR THE UNIVERSITY OF LOUISIANA SYSTEM, ET AL.** | **SECTION: N** |

**ORDER AND REASONS**

Before the Court is the Motion to Dismiss of Defendants Mark Romero and William Wainwright, in which they ask the Court to dismiss with prejudice all claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] Plaintiff Peter M. Gratton filed an opposition,[2] and Romero and Wainwright filed a reply in further support of their motion.[3] Oral argument on this motion was held on July 14, 2026. Having considered the parties' oral and written arguments, the record, and applicable law, the Court issues this Order and Reasons granting the motion.

## I. BACKGROUND

In 2023, Dr. Gratton began his sixth year as an assistant professor at Southeastern Louisiana University ("Southeastern").[4] Southeastern is a member of the University of Louisiana System ("ULS") and overseen by the ULS Board of Supervisors ("Board").[5] At the commencement of his sixth year, Dr. Gratton became

---

[1] Rec. Doc. 20.
[2] Rec. Doc. 23.
[3] Rec. Doc. 25.
[4] Rec. Doc. 11 ¶¶ 1-2.
[5] *Id.* ¶ 1.

eligible for tenure review and accordingly informed his department head of his intent to apply for tenure.[6] The Southeastern Tenure and Promotion Guidelines provide that once a tenure track faculty begins her or his sixth year and expresses an intent to apply for tenure, the tenure review process commences.[7]

On June 1, 2023, Dr. Gratton received a non-reappointment letter dated May 31, 2023. Southeastern's Policy on Termination and Non-Reappointment of Faculty requires that notice of non-renewal of a probationary appointment must be given to faculty at least twelve months before the expiration of an appointment after two or more years of service at the educational institute.[8] Dr. Gratton alleges that his non-reappointment was in violation of this policy because he did not receive notice at least twelve months before the expiration of his sixth-year appointment.[9] When his department chair asked him to backdate the letter to render it compliant with the policy, Dr. Gratton refused.[10] Due to this violation, Dr. Gratton's appointment was renewed for his sixth year.

On September 28, 2023, the department chair notified Dr. Gratton by letter that he had recommended Dr. Gratton's appointment as assistant professor not be extended beyond December 17, 2024.[11] The chair made this recommendation after the commencement of Dr. Gratton's sixth year and after Dr. Gratton expressed his

---

[6] *Id.* ¶¶ 2, 12 ("According to Defendant's Bylaws & Rules, … a faculty member is eligible for tenure after serving his probationary period, which is six years.").
[7] *Id.* ¶ 23.
[8] *Id.* ¶¶15-18.
[9] *Id.*
[10] *Id.* ¶ 20.
[11] *Id.* ¶ 24.

intent to apply for tenure.[12] On October 2, 2023, Dr. Gratton was informed that, upon approval of the Board, his appointment would not extend past December 17, 2024.[13] Defendants Romero and Wainwright approved of Dr. Gratton's non-reappointment.[14]

In January 2024, Dr. Gratton filed an internal grievance with Southeastern because he believed Southeastern deviated from its own policies with respect to tenure review eligibility and non-reappointment.[15] Although Southeastern's procedures require the chair of the grievance committee to preside over the internal hearing, he did not do so.[16] The committee ruled that it did not have authority to adjudicate tenure, promotion, and reappointment issues such as those raised by Dr. Gratton. Dr. Gratton also filed an external grievance to the ULS.[17]

On December 5, 2024, the Board Grievance Committee held a hearing. Prior to that hearing, Dr. Gratton discovered the decision of the Board in an electronic folder. From this, Dr. Gratton claims he was denied an opportunity to be heard.[18] The Board Grievance Committee upheld Southeastern's decision and determined that no further consideration would be given to Dr. Gratton's appeal.[19]

Dr. Gratton filed suit for injunctive and declaratory relief for ongoing violations of substantive and procedural due process under the Fourteenth Amendment.[20] In

---

[12] *Id.* ¶ 25.
[13] *Id.* ¶ 26.
[14] *Id.* ¶¶ 27-28.
[15] *Id.* ¶29.
[16] *Id.* ¶¶ 30-31.
[17] *Id.* ¶ 33.
[18] *Id.* ¶¶ 36-37.
[19] *Id.* ¶ 36.
[20] *Id.* ¶ 5.

his initial complaint, he named the Board as the sole defendant.[21] The Board moved to dismiss on sovereign-immunity grounds, arguing that immunity extended to the Board as an arm of the state.[22] In response, Dr. Gratton filed an amended complaint in which he replaced the Board with defendants William S. Wainwright, in his official capacity as President of Southeastern, and Mark Romero, in his official capacity as Chair of the Board,[23] and the motion to dismiss was denied as moot.[24] Dr. Gratton alleges that his non-reappointment failed to comply with Southeastern's and the Board's policies and, in turn, violated his substantive and procedural due process rights.[25] Alleging claims under 42 U.S.C. § 1983, he seeks to enjoin "Defendants from ongoing violations of [his] substantive and procedural due process" and declaratory relief reinstating him to his position at Southeastern, rendering him eligible for the tenure review process, and requiring defendants to comply with applicable policies and procedures.[26] Wainwright and Romero filed the present motion to dismiss, arguing that sovereign immunity forecloses Dr. Gratton's suit against them.[27]

## II. <u>LEGAL STANDARD</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would

---

[21] Rec. Doc. 1.
[22] Rec. Doc. 7.
[23] Rec. Doc. 11.
[24] Rec. Doc. 32.
[25] Rec. Doc. 11.
[26] *Id.* at 10.
[27] Rec. Doc. 20.

entitle him to relief.[28] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[29] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[30] The Court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[31]

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[32] "Determining whether a complaint states a plausible claim for relief [is] … a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[33] "Although detailed factual allegations are not required," "[d]ismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[34]

## III. <u>LEGAL ANALYSIS</u>

Wainwright and Romero seek dismissal of Dr. Gratton's lawsuit on the grounds that (1) sovereign immunity bars his claims; and (2) he failed to allege a constitutional

---

[28] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[29] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[30] *Id.*
[31] *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citation modified).
[32] *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).
[33] *Id.*
[34] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (citation modified).

violation because he has no constitutionally protected property interest with respect to tenure review eligibility.

### A. Defendants are entitled to sovereign immunity.

State sovereign immunity, reflected in the Eleventh Amendment, protects states or "arm[s] of the state" from suit in federal court.[35] Unless a state has waived its sovereign immunity or Congress has abrogated it, federal courts do not have jurisdiction over suits against a state, state agency, or state official acting in his official capacity.[36] Although Dr. Gratton amended his complaint to allege claims against Wainwright and Romero in their official capacities, his claims still are foreclosed by sovereign immunity if, as defendants argue, the state is the real party in interest. The law in this area "comport[s] with the common-sense notion that a plaintiff cannot avoid the sovereign immunity bar by suing a state agency or an arm of a State rather than the State itself."[37] "[R]elief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter."[38]

The *Ex Parte Young* doctrine, however, provides an exception that allows a plaintiff to sue a state actor in his official capacity when seeking injunctive relief to prevent an ongoing violation of federal law.[39] This exception recognizes that the state cannot "impart to the official immunity from responsibility to the supreme authority of the United States."[40] Thus, when deciding whether the *Ex Parte Young* doctrine

---

[35] *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 427 (1997) (citation modified).
[36] *Healthy Vision Ass'n v. Abbott*, 138 F.4th 385, 396 (5th Cir. 2025).
[37] *Richardson v. S. Univ.*, 118 F.3d 450, 452 (5th Cir. 1997).
[38] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (citation modified).
[39] *Ex Parte Young*, 209 U.S. 123, 158-160 (1908).
[40] *See id*. at 167.

applies, a court considers "whether the complaint alleges an ongoing violation of federal law" against a state official in his official capacity "and seeks relief properly characterized as prospective."[41]

The first question is whether the State of Louisiana has generally waived its right to sovereign immunity in federal court. It has not. Rather, Louisiana law provides that "[n]o suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court."[42] Boards of Supervisors to Louisiana state schools are arms of the State of Louisiana.[43]

The Court next determines whether the suit is against a state or arm of the state. Defendants argue that Dr. Gratton's suit seeking declaratory and injunctive relief against them in their capacities as Board chair and university president is functionally a suit against the Board itself, which is entitled to sovereign immunity.[44] The Court agrees. For Dr. Gratton to receive the requested relief—a declaration of reinstatement and eligibility for tenure review and an injunction as to violations of employment-related due process—Louisiana law would require a vote from the entire Board, not the action of only the two defendants. By law, "all official actions of each board shall require the favorable vote of nine members."[45] Further, the Board possesses management and regulatory power over the state colleges and universities,

---

[41] *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (citation modified); *see also Healthy Vision Ass'n*, 138 F.4th at 396 (identifying criteria for suit against state official to proceed under *Ex Parte Young*).
[42] La. Rev. Stat. Ann. § 13:5106(A).
[43] *See Richardson*, 118 F.3d at 456; see also *Raj v. Louisiana State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013).
[44] Rec. Doc. 20.
[45] La. Rev. Stat. Ann. § 17:3356.

including the ability to "employ or approve the employment" of university personnel.[46] Thus, Wainwright and Romero cannot grant the relief sought. Instead, Dr. Gratton effectively makes his claim against the Board, which is protected by sovereign immunity.[47]

The *Ex Parte Young* exception does not save Dr. Gratton's claims. Dr. Gratton seeks to enjoin defendants from the alleged ongoing violation of his procedural and substantive due process rights.[48] He also seeks "declaratory relief" in the form of reinstatement to his position at Southeastern, eligibility for the tenure review process, and defendants' compliance with applicable Southeastern and Board policies and procedures.[49] As an initial matter, "[t]he *Ex Parte Young* doctrine does not permit 'a declaratory judgment that respondent violated federal law in the past.'"[50] Dr. Gratton's requested declaratory relief is "fundamentally retrospective because it does not relate to an ongoing violation of federal rights."[51] Instead, it seeks to remedy the Board's past decision declining to extend his appointment or to consider him in the tenure review process. The same is true for the injunctive relief Dr. Gratton seeks. Rather than there being any ongoing violation, the decision not to extend Dr. Gratton's appointment or consider him in the tenure review process took place in the past.

### B. Defendants did not violate Dr. Gratton's constitutional rights.

---

[46] La. Rev. Stat. Ann. § 17:3351(A)(10).
[47] *Warnock v. Pecos Cnty., Tex.,* 88 F.3d 341, 343 (5th Cir. 1996).
[48] Rec. Doc 11 ¶¶ 47, 52.
[49] Rec. Doc 11 ¶¶ 54, 56.
[50] *Corn v. Mississippi Dep't of Pub. Safety*, 954 F.3d 268, 276 (5th Cir. 2020) (citation modified).
[51] *Id.* (citation modified); *see also infra* Part III.B.

Even if the defendants were not entitled to sovereign immunity, the Court also finds that Dr. Gratton failed to allege a violation of his constitutional rights. Dr. Gratton argues he possesses a property interest in tenure review eligibility and, thus, defendants violated his Fourteenth Amendment substantive and procedural due process rights by denying him this review.[52] Defendants contend that non-tenured professors do not hold the same due process protections as tenured professors.[53] Further, defendants argue that eligibility for tenure *review* does not rise to the level of automatic tenure and thus is not a constitutionally protected interest.[54]

The Court agrees that eligibility for tenure review is not a constitutionally protected interest, and thus Dr. Gratton had no due process rights, whether procedural or substantive, protected by the Fourteenth Amendment. "If an individual does not have a constitutionally protected property or liberty interest, he or she cannot be deprived of due process and thus cannot maintain a §1983 action."[55] While the underlying interest is created by an independent source like state law, "federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause."[56] To succeed on a due process claim, Dr. Gratton must show he had a "legitimate claim of entitlement" to tenure review.[57]

---

[52] Rec. Doc. 23.
[53] Rec. Doc. 20.
[54] *Id.*
[55] *Klinger v. Univ. of S. Miss.*, 612 F. App'x 222, 227 (5th Cir. 2015) (citation modified).
[56] *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 757 (2005).
[57] *Wigginton v. Jones*, 964 F.3d 329, 336 (5th Cir. 2020) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

Under Louisiana law, a public-school teacher's entitlement to continued employment—and thus any property interest protected under the Fourteenth Amendment—arises only from tenure.[58] A tenured teacher may be removed only for an enumerated cause and upon statutory process. A teacher without tenure "may be discharged ... without notice or a hearing, so long as valid reasons ... are expressed in writing by the Superintendent."[59]

In *Klinger*, the Fifth Circuit held that an employee was not deprived of any constitutionally protected property interest when a university declined to renew his contract.[60] The court reasoned that an employee "could have no legitimate expectation in an opportunity to satisfy the tenure criteria," and that "the decision over continued employment would be entirely within the discretion of the board."[61] Similarly, in *Wiggington*, the Fifth Circuit held that "tenure-track employees face an uphill battle when challenging the denial of tenure under a discretionary tenure system."[62]

Dr. Gratton relies on *Honore*, where the Fifth Circuit found that an employee who was denied automatic tenure plausibly stated a violation of his substantive due process rights.[63] However, this reliance is misplaced. Dr. Gratton is equating automatic tenure with eligibility for tenure review. The policy in *Honore* was a

---

[58] *In re Richard*, 379 So. 3d 849, 855-56 (La. Ct. App. 2024).
[59] *Tate v. Livingston Par. Sch. Bd.*, 391 So. 2d 1240, 1242 (La. Ct. App. 1980); *see* La. Rev. Stat. Ann. §§ 17:442, 17:443.
[60] *Klingler*, 612 F. App'x at 228.
[61] *Id.* (citation modified).
[62] *Wigginton*, 964 F.3d at 339.
[63] *Honore v. Douglas*, 833 F.2d 565, 568 (5th Cir. 1987).

"vesting automatic tenure after seven years of teaching,"[64] whereas here, by Dr. Gratton's own account, "the decision to grant tenure is in the discretion of [Southeastern]."[65] Just as *Klinger* and *Wiggington* reasoned, tenure-track employees do not have the same property interests as tenured or automatically tenured employees, even when, as Dr. Gratton argues, the tenure review should be automatic. Thus, Dr. Gratton's claims are dismissed not only because of sovereign immunity, but also because he does not allege due process violations.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Motion to Dismiss filed by Defendants Mark Romero and William S. Wainwright is **GRANTED**.

**IT IS FURTHER ORDERED** that the claims against Defendants are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 31st day of August, 2026.

**ANNA ST. JOHN**
**UNITED STATES DISTRICT JUDGE**

---

[64] *Id.*
[65] Rec. Doc. 11 ¶ 3.